### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1868, IN THE FIFTY-SECOND YEAR
OF THE STATE.

---◆---

WOOLERY and Others *v.* WOOLERY and Others.

ADVANCEMENT.—Where a voluntary conveyance of land is made by a
parent to a child, it is *prima facie* an advancement and not a gift, but the
question is purely one of intention on the part of the parent.

SAME.—EVIDENCE.—The fact of the conveyance being established by com-
petent proof, parol evidence of the declarations of the ancestor, made
shortly before, as well as of subsequent declarations, is admissible to
establish or rebut the intention to make an advancement.

APPEAL from the *Putnam* Common Pleas.

ELLIOTT, J.—This was a suit by the appellees against the
appellants for partition of two hundred acres of land in
*Putnam* county, of which, in *September*, 1866, *Abraham
Woolery*, the ancestor, died seized and intestate. The plain-
tiffs below are four of the children of the intestate. The
defendants, who are the appellants here, are *Martha Woolery*,
the widow, *William M.* and *John J. Woolery*, sons, and
*William O. Hart*, the grand-son of the decedent.

On the 26th of *September*, 1864, said *Abraham Woolery* purchased a tract of land containing eighty acres, situate in *Edgar* county, *Illinois*, of the value of $2,400, paid the purchase money, and caused the land to be conveyed to his sons *William M.* and *John J. Woolery*, which, it is alleged in the complaint, was an advancement to them by their said father, and should be charged against them in the division of his estate.    But the sons insist that the land was conveyed to them as a gift from their said father, and not as an advancement.    Out of this issue arise the only questions in the case.

The question of advancement was submitted to a jury. On the trial, the plaintiffs gave in evidence a deed from one *John Henderson* to said *William M.* and *John J. Woolery*, for the land in *Illinois* referred to, and also introduced the said *William M. Woolery* as a witness, who testified that his father paid for the land described in said deed, and gave it to him and his brother, and caused it to be conveyed to them; "that nothing was said by his father as to its being an advancement to them, or as to any intention on his part to charge them with it as an advancement;" that he, said witness, was in his twenty-second year, and resided with his father at the time of said conveyance, having never left the parental home.    On this evidence, the plaintiffs rested the question.

One *John Adams*, a competent witness, was thereupon introduced and sworn as a witness on behalf of the defendants, who thereupon offered to prove by him that he was at the house of said *Abraham Woolery*, the ancestor, in said county of *Putnam*, on the 24th of *September*, 1864, when said *Abraham* asked the witness to write a will for him, and then told the witness that he wanted to give said *William M.* and *John J. Woolery*, his younger sons, more property than the rest of his children; that the witness thereupon advised said *Abraham* that he could effect his purpose of giving said *William* and *John* more property than his other children, without a will, by conveying or causing land

to be conveyed to them ; and that, pursuant to said advice, the said *Abraham* went to *Illinois*, and on the 28th of *September*, 1864, purchased the land described in the deed, and caused it to be conveyed to said *William* and *John*. The defendants further offered to prove, by the same witness, that about twenty or thirty days later, said *Abraham* informed the witness that he had purchased said land in *Illinois*, and caused it to be conveyed to said *William* and *John* as a gift, for the purpose of securing to them a larger share of his property than the other children would receive; to all of which the plaintiffs objected, and the court sustained the objection and excluded the evidence, to which the defendants excepted.

The defendants also offered to prove, by one *Simpson Watson*, a competent witness, that after the purchase and conveyance of the *Illinois* land to said *William* and *John*, the said *Abraham* informed the witness that he had purchased said land and caused it to be conveyed to said *William* and *John* as a gift, for the purpose of securing to them a larger share of his property than the other children would receive. This evidence was also objected to by the plaintiffs and excluded by the court, to which the defendants excepted.

An exception was also taken to the following instruction given by the court to the jury : " The purchase of land and the payment therefor by the father, and the causing the deed to be made to a child, in the absence of all proof of intention, raises a presumption that it was intended as an advancement."

The following instructions were prayed by the defendants, and refused by the court, viz :

" 1. If the deceased conveyed, or caused the land in question to be conveyed to *William* and *John*, without any valuable consideration having been paid by them, the presumption arising from this simple fact is that said conveyance was intended as a gift, and not as an advancement.

" 2. After showing the conveyance of the land in question to *William* and *John*, the burden of proof is upon the

plaintiffs, alleging the fact, to prove that such conveyance was intended as an advancement.

"3. If the jury find, from the evidence, that the deceased, in his lifetime, conveyed to the defendants, or to either of them, the *Illinois* land named in the complaint, without any valuable consideration, the law presumes the same to be a gift, and the jury must find it to be a gift and not an advancement, unless they also find, from the evidence, that the same was designed and intended to operate as an advancement."

The jury returned the following verdict: "We, the jury, having referred to us the issue of advancements, find that *Abraham Woolery*, deceased, the ancestor of said plaintiffs and defendants, advanced said defendants, *William M. Woolery* and *John J. Woolery*, on the 28th day of *September*, A. D. 1864, eighty acres of land in the State of *Illinois*, of the value of twenty-four hundred dollars, being, to each of them, twelve hundred dollars, by purchasing said lands and causing the same to be conveyed to them, as alleged in the complaint."

Motion for a new trial overruled, and a decree of partition in accordance with the verdict of the jury. Other proceedings were had, resulting in a final partition of the land in *Putnam* county, *Indiana*, charging therein said *William* and *John* with twelve hundred dollars each, as advanced to them by the conveyance of the land in *Illinois*. The case is before us on a bill of exceptions, reserving the questions of law involved, under section 347 of the code. 2 G. & H. 210.

There are but two questions presented by the record, necessary to be noticed. 1. Are the facts that the father purchased the land in *Illinois* and paid for it with his own money, and then caused it to be conveyed to his sons, *William* and *John*, *prima facie* evidence of an advancement to them? 2. Did the court err in rejecting the parol evidence offered by the appellants?

Section 12 of the statute of descents (1 G. & H. 293) pro-

vides, that "advancements in real or personal property shall be charged against the child, or descendants of the child, to whom the advancement is made, in the division or distribution of the estate, but if the advancement exceed the equal proportion of the child advanced, the excess shall not be refunded."

It is further declared, by the 14th section of the same act, that "maintaining, educating, or giving money to a child under the age of majority, without any view to a portion or settlement in life, shall not be deemed an advancement."

It will be observed that section 12 does not define what shall be an advancement, while the 14th section only declares what shall not be deemed such. In *Dillman* v. *Cox*, 23 Ind. 440, it is defined to be "a giving by anticipation the whole or part of what it is supposed a child will be entitled to on the death of the parent or party making the advancement." It must have been intended as an advancement to make it such, and not as a mere gift. It is therefore purely a question of intention on the part of the parent or party making the advancement or gift. The intention may be shown by parol proof, but in the absence of any other evidence, the fact that the father voluntarily conveys real estate, or causes it to be conveyed, or transfers personal property to a child, is *prima facie* evidence of an advancement, and not a gift. 4 Kent's Com. 418. It was so expressly held in *Dillman* v. *Cox, supra.* See also *Stanley* v. *Brannon*, 6 Blackf. 193, and *Hodgson* v. *Macy*, 8 Ind. 121. In *Shaw* v. *Kent*, 11 Ind. 80, which arose under the revision of 1843, it was held that "to constitute an advancement to a child, 'by settlement or portion of real or personal estate,' such settlement or portion must have been so intended." That the intention may be shown by parol evidence is also clearly recognized in that case. The wording of the statute of 1843 is not the same as that of 1852, but there is no substantial difference between them in principle. We therefore conclude that the court did not err in

its instruction to the jury, or in refusing the instructions asked by the appellants.

2. Did the court err in rejecting the parol evidence offered by the appellants? We have already shown that the presumption arising from the conveyance of the *Illinois* land to *William* and *John*, that it was intended as an advancement to them, might be rebutted by parol evidence; the only question, therefore, remaining to be determined is, was the evidence offered legitimate for that purpose?

That the father purchased the land in *Illinois*, paid for it, and caused it to be conveyed to his two sons, *William* and *John*, are facts not controverted by them. Nor was the evidence rejected by the court intended either to prove or disprove those facts; it was offered simply to show that the father intended the conveyance as an absolute gift, and not as an advancement. The main fact, the conveyance of the property to the two sons, was established by other evidence. The declarations of the father, made a few days prior to the conveyance, as well as those made subsequent thereto, tending to show his purpose or intent in procuring the conveyance, may be fairly considered as a part of the *res gestæ*, or facts forming a part of the transaction, and in explanation thereof, and were proper evidence for that purpose. The same principle is recognized in the opinion of the court in the case of *The Inhabitants of Milford* v. *The Inhabitants of Billingham*, 16 Mass. 108. But the case of *Hicks* v. *Gildersleeve*, 4 Abbott's Pr. R. 1, is directly in point. There, the question was whether certain entries, made by the father in a book, of property transferred by him to his children, and also his oral declarations made in reference to the alleged advancements, and a statement in a paper signed by him, and intended as a will, but which was invalid as such, were properly admitted in evidence to show the intent of the father to charge the several sums to the children as advancements. In the decision of the question, it is said by the court that "the declaration, oral or written, of a parent, his entries and charges in his books, or any explicit

memorandum made by him, are unquestionably proper evidence upon questions of advancement, after it has been proved that a child has received money or property of such parent, to show that such money or property was neither intended as an absolute gift on the one hand, nor to create a debt on the other. For that purpose, I think the declarations of the intestate, his entries in his account book, and the paper signed by him and intended for a will were properly received in evidence in this action. But this is their only effect. They do not prove or establish the fact that any of these children had money or property from their father. That must be shown like any other fact, in a legal manner and according to the ordinary rules of evidence."

On this point, the appellees' counsel refers to the case of *Tremper* v. *Barton*, 18 Ohio, 418, as sustaining the ruling of the Common Pleas. We do not so understand that case. It was a bill for the review of a previous decree in a case, in which one *Edward Barton*, sen., had purchased a tract of land, and caused it to. be conveyed to his son. After the death of the father, his other children filed a bill claiming an interest in the land by descent, on the ground that it was conveyed to the son in trust for the father, which was denied by the son. On the trial, the court received evidence showing that the object in causing the conveyance to be made to the son was to defraud the creditors of the father. This was one of the errors complained of in the bill of review. The court, after deciding that the evidence was properly admitted, and that the fact that the land was conveyed to defraud creditors defeated the plaintiff's claim, also held that the conveyance to the son might be sustained as an advancement, and in that connection said: "If a father thus purchases land, and directs the conveyance to be made to a son or daughter, the presumption is that it is intended as an advancement. This presumption may be rebutted by competent evidence. Declarations made by the father subsequent to the conveyance, however, would not be sufficient.

But even if they were, it seems, in this case, that the father treated the land as his son's for many years after the date of his deed, and even up to near the time of his death." The subsequent declarations of the father, here referred to, were evidently those in which he claimed the land on the ground that it was held by the son in trust for him. Such declarations would be clearly inadmissible, as they would go to defeat the title of the son, and it is well settled that the declarations of a vendor subsequent to the conveyance are not proper for such a purpose. But in the case at bar, the evidence offered was for a very different purpose, and we think the court erred in rejecting it.

The judgment is reversed, with costs, and the cause re-manded for a new trial.

*S. Turman,* for appellants.

*D. E. Williamson* and *A. Daggy,* for appellees.